

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| HALEY ARELLANO and MARCOS ARELLANO, Plaintiffs, vs. CEDAR FAIR, L.P., d/b/a *Cedar Fair Entertainment Company,* d/b/a *Carowinds*; CEDAR FAIR SOUTHWEST, INC; BRIAN OERDING, *Individually and as Agent, Servant, and Employee of Carowinds*; and DIEGO DAVIS, *Individually and as Agent, Servant, and Employee of Carowinds*, Defendants. | § § § § § § § § § § § § § § | Civil Action No. 0:21-0262-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND**

I. **INTRODUCTION**

This is a common law action, which includes claims for negligence, gross negligence, premises liability, and loss of consortium based on Plaintiffs Haley Arellano's (Haley) and Marcos Arellano's (Marcos) (collectively, the Arellanos) alleged injuries at Carowinds Amusement Park (Carowinds). The Arellanos brought their lawsuit in the York County Court of Common Pleas against Defendants Cedar Fair, L.P., d/b/a Cedar Fair Entertainment Company, d/b/a/ Carowinds (Cedar Fair); Cedar Fair Southwest, Inc. (Southwest); Brian Oerding (Oerding), individually and as agent, servant, and employee of Carowinds; and Diego Davis (Davis), individually and as agent,

servant, and employee of Carowinds (collectively, Defendants). Defendants subsequently removed the litigation to this Court, stating the Court has diversity jurisdiction in accordance with 28 U.S.C. § 1332.

Pending before the Court is the Arellanos' motion to remand this action to the York County Court of Common Pleas (the motion or the motion to remand). Having carefully considered the motion, the notice of removal, the response, the replies, the record, and the applicable law, it is the judgment of the Court the motion to remand will be granted.

## II. FACTUAL AND PROCEDURAL HISTORY

On August 20, 2019, the Arellanos visited Carowinds, which is located along the border of North Carolina and South Carolina. As Haley attempted to ride one of the attractions called "Mountain Gliders" on the South Carolina side of the park, she alleges she fell backward (the incident) due to the free-swinging nature of the attraction's seat and a lack of employee assistance. The Arellanos claim several significant injuries as a result of the incident.

The Arellanos subsequently brought suit against Defendants. According to the record, (1) the Arellanos are citizens of North Carolina; (2) Cedar Fair is a limited partnership with its principal place of business in Ohio, making it a citizen of Ohio and any state where a partner resides, *See Carden v. Arkoma Assoc.*, 494 U.S. 185 (1990) (holding that a limited partnership has the citizenship of each of its partners, whether general or limited); but there has been no suggestion any of Cedar Fair's partners are citizens of South Carolina; (3) Southwest is a Delaware corporation with its principal place of business in Ohio, making it a citizen of both Ohio and Delaware; and (4) Oerding and Davis (the Individual Defendants) are citizens of South Carolina .

2

As the Court noted above, Carowinds is the amusement park where the incident occurred. Cedar Fair is the parent company of Carowinds and Southwest, and Southwest is the corporation that manages the day-to-day operations at Carowinds. The Individual Defendants were employees at Carowinds at the time of the incident. Oerding was the director of operations, and Davis was the ride maintenance foreman.

After Defendants removed the Arellanos' lawsuit to this Court, the Arellanos filed their motion to remand. Defendants subsequently responded, and the Arellanos filed a reply. As the Court discusses below, the Court subsequently requested clarification regarding the parties' arguments, to which the parties filed a joint reply. This Court, now having been fully briefed on the relevant issues, is prepared to adjudicate the motion to remand.

### III. STANDARD OF REVIEW

Federal courts have original jurisdiction over two types of cases: federal questions under 28 U.S.C. § 1331, and diversity actions in accordance with 28 U.S.C. § 1332. Neither party alleges the existence of a federal question, so if this case is removable at all, it must be under the diversity statute. Complete diversity jurisdiction exists when the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district . . . where such action is pending." *Id*. § 1441(a). But, "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the

State in which such action is brought." *Id*. § 1441(b)(2). This is often referred to as the forum-defendant rule.

In a case such as this, "[t]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). The Court is "obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (quoting *Mulcahey*, 29 F.3d at 151).

"Therefore, '[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.'" *Id*. (quoting *Mulcahey*, 29 F.3d at 151). Moreover, when considering a motion to remand, the Court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1163-64 (5th Cir. 1988).

## IV. DISCUSSION AND ANALYSIS

### A. *Whether there is diversity of citizenship between the parties*

After the parties had completed briefing on the motion to remand, the Court filed an order stating "[t]he parties['] contentions in [the] filings seem to center around whether [the Arellanos] joined [the Individual Defendants] for the purpose of defeating this Court's diversity jurisdiction. *See, e.g.*, [Motion to Remand at 1] ('The [c]omplaint on its face is not removable because there is not complete diversity of citizenship between [the Arellanos] and all Defendants.'); Defendants' Response at 5 (The Arellanos' '[c]omplaint fails to properly allege any cause of action against the Individual Defendants; therefore, they have been fraudulently joined in an effort to defeat diversity

4

and [the Arellanos'] [m]otion for [r]emand should be denied on that basis.').'" May 17, 2021, Order at 1.

But, as the Court observed, "there appears to be complete diversity between [the Arellanos] and Defendants, with or without the Individual Defendants: [the Arellanos] are citizens . . . of . . . North Carolina; Cedar Fair . . . is a [citizen of Ohio and any state where a partner resides]; . . . Southwest . . . is a [citizen of Ohio and Delaware]; and the Individual Defendants are citizens . . . of . . . South Carolina." *Id* at 2.

Thus, the Court directed the parties to "confer, draft, and file a joint document clarifying the parties' argument[s] on the diversity of citizenship issue." *Id*. In a joint reply, the parties agreed that there is indeed complete diversity of citizenship. Instead, the source of their disagreement is based on the forum-defendant rule's possible prohibition of the removal of this action. Joint Reply at 1-2.

As the parties recognized, the forum-defendant rule "provides that even where diversity of citizenship exists, a defendant cannot remove a case to federal court on diversity grounds if 'any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Id*. at 2 (quoting 28 U.S.C. § 1441(b)(2)). Therefore, if the Arellanos fraudulently joined the Individual Defendants, then their citizenship can be ignored for purposes of the forum-defendant rule. *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (holding that the fraudulent joinder "doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of [in-state] defendants").

### B. Whether the Arellanos fraudulently joined the Individual Defendants so as to invoke the forum-defendant rule

The sole question before the Court, therefore, is whether the Arellanos fraudulently joined the Individual Defendants, who are citizens of South Carolina, so as to invoke the forum-defendant rule and foreclose removal. *See* Section 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). If the Arellanos fraudulently joined them, then the Court will ignore the Individual Defendants' citizenship and deny the motion to remand. If, however, the Individual Defendants were not fraudulently joined, then the forum-defendant rule applies, and this case must be remanded to state court.

Fraudulent joinder occurs when a removing party demonstrates either, "outright fraud in the plaintiff's pleading of jurisdictional facts," or "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)).

Here, Defendants omit allegations of outright fraud in the jurisdictional pleadings, so if fraudulent joinder exists, it must be under the "'no possibility' formulation, in which a plaintiff's claim . . . 'need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.'" *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Marshall*, 6 F.3d at 233). As such, Defendants' burden here "is heavy; [they] must show that the [Arellanos] cannot establish a claim against the [Individual Defendants] even after resolving all issues of fact and law in the [Arellanos'] favor." *Marshall*, 6 F.3d. at 232-33 (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)).

This standard, of course, heavily favors the Arellanos, "who must show only a glimmer of hope of succeeding against [the Individual Defendants]." *Johnson*, 781 F.3d at 704 (citation omitted) (internal quotation marks omitted). Indeed, the Fourth Circuit has held "[t]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id*. (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)) (internal quotation marks omitted). And, when analyzing fraudulent joinder under the no possibility prong, "the [C]ourt is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464 (citation omitted) (internal quotation marks omitted).

In the instant matter, the Arellanos maintain the Individual Defendants owed duties to the Arellanos, including "properly and safely operating; constructing; installing; preparing; servicing; inspecting; maintaining; managing; controlling; [and] identifying, eliminating, warning about, safeguarding against, and taking safety precautions with respect to dangerous, unsafe, defective and hazardous conditions associated with[] helping patrons board . . . the attraction known as 'Mountain Gliders' involved in [Haley's] injury." Motion to Remand at 2-3. The Arellanos allege "[the Individual Defendants] breached these duties. These breaches caused [Haley] to be injured. [The Arellanos] suffered harms and losses as a result." *Id*. at 3.

Defendants, on the other hand, in support of their claim of fraudulent joinder, argue "[t]he entire record of this case fails to disclose any negligent act or omission on the part of [the Individual Defendants]." Defendants' Response at 6. In making this argument, Defendants oppose any suggestion the Individual Defendants owed duties to the Arellanos as individuals—but recognize the Arellanos' "allegations against [the Individual Defendants] are that they were agents of the corporate defendants and that they had duties as a result thereof." *Id*.

7

Defendants consequently rely on agency principles and the doctrine of respondeat superior in an effort to assert that the Arellanos are unable to establish any claims against the Individual Defendants. *See, e.g.*, Defendants' Response at 6 ("While proof that an agent of a corporation 'voluntarily and intentionally caused a corporation to act is sufficient to make him personally accountable,' no such allegations or evidence have been submitted in this case."). Thus, Defendants seem to suggest that, although the Individual Defendants owed duties to the Arellanos as employees of Carowinds, the Individual Defendants cannot be held personally liable because they were acting within the scope of their employment at the time of the incident. The Court disagrees.

Because the incident occurred in South Carolina, South Carolina substantive tort law controls whether there is a cause of action against the Individual Defendants. Under South Carolina law, it is generally true that a plaintiff may recover from an employer for the negligence of an employee who is acting within the scope of their employment. *See Armstrong v. Food Lion, Inc.*, 639 S.E.2d 50, 53 (S.C. 2006) (stating that to recover from a tortfeasor's employer for the actions of an employee, a plaintiff must show the tortfeasor was acting in the scope of his employment by furthering the employer's business). But South Carolina courts have also long held, "[an employee] is personally liable for a tort, whether the [employer is] or not." *Bell v. Clinton Oil Mill*, 124 S.E. 7 (S.C. 1924) (cited with approval in *South Carolina Ins. Co. v. James C. Greene & Co.*, 348 S.E.2d 617, 626 (S.C. Ct. App. 1986)).

In other words, "under the doctrine of respondeat superior, the [employer] is liable in addition to the [employee], not by reason of his consent to be liable, but by operation of law." *South Carolina Ins. Co.*, 348 S.E.2d 617, 624. "[The doctrine's] purpose is not to let a negligent party evade responsibility for his wrongdoing; the negligent [employee] remains liable both to the

third party and to his master." *Id*. at 625-26. Indeed, "[i]n circumstances where an [employee] has committed a tort against a third person, the [employee]'s liability for the resulting damages is unaffected by the fact he was acting in [the scope of employment]." *Long v. Norris & Assocs. Ltd.*, 538 S.E.2d 5, 13 (S.C. Ct. App. 2000) (citing *Gilbert v. Mid-South Mach. Co.*, 227 S.E.2d 189 (S.C. 1976); F. PATRICK HUBBARD & ROBERT L. FELIX, THE SOUTH CAROLINA LAW OF TORTS 634 (2d ed. 1997); Restatement (Second) of Agency § 217B(2) (1957)).

For example, in *Long*, the South Carolina Court of Appeals overturned the trial court's dismissal of an individual defendant in a tort action against both the individual defendant and his employer. 538 S.E.2d 5. There, the court held that, although the individual defendant was an employee who was acting within the scope of his employment at the time of the alleged incident, dismissal of the individual defendant was improper because his liability was "unaffected by the fact that he was acting in [the scope of employment]." *Id.*

Like the individual defendant in *Long*, the Individual Defendants here were acting within the scope of their employment at the time of the incident. As such, Defendants' argument that the Individual Defendants cannot be held personally liable on that basis is without merit.

Put simply, to demonstrate the Arellanos have at least "a glimmer of hope of succeeding against the [Individual Defendants,]" *Johnson*, 781 F.3d at 701, the Arellanos must show (1) that the Individual Defendants owed them a duty of care, (2) that the Individual Defendants breached that duty by an act or omission, (3) that the Individual Defendants' breach was the actual or proximate cause of their injuries, and (4) that they suffered an injury or damages. *Doe v. The Citadel*, 805 S.E.2d 578, 581 (S.C. Ct. App. 2017).

The Arellanos named the Individual Defendants to this lawsuit, along with Cedar Fair and Southwest, alleging Defendants breached a duty of care owed to them arising out of the incident.

9

Moreover, their complaint seeks "to recover all damages suffered as a result of the failures of Defendants and their agents, servants, employees, partners, joint ventures, alter-egos, representatives, parents/subsidiaries and/or successor corporations[,] . . . which ultimately caused the August 20, 2019[,] incident[.]" Complaint at 5.

The Arellanos assert the Individual Defendants had duties within the scope of their employment that included keeping the amusement park and its rides, like Mountain Gliders, safe. Motion to Remand at 2-3. They contend (1) the Mountain Gliders ride was "unstable," (2) no employee or step stool was present to assist Haley in climbing onto the attraction, and (3) the Individual Defendants had a responsibility to do something about these conditions but failed to do so. *Id*. at 2.

Based on these facts and a review of the entire record, the Court easily concludes the Arellanos have stated a claim against the Individual Defendants that withstands challenge on the basis of fraudulent joinder. Put another way, "resolving all issues of fact and law in [the Arellanos'] favor," *Marshall*, 6 F.3d at 233, the Court is unable to reach any conclusion other than the Arellanos have at least a "glimmer of hope of succeeding against [the Individual Defendants]." *Johnson*, LLC, 781 F.3d at 704 (citation omitted) (internal quotation marks omitted). As such, the Individual Defendants' citizenship cannot be ignored, and the forum-defendant rule applies. This action, therefore, must be remanded to state court in accordance with the forum-defendant rule. 28 U.S.C. § 1441(b)(2).

## V. CONCLUSION

In light of the foregoing discussion and analysis, Arellanos' motion to remand is **GRANTED**, and this case is **REMANDED** to York County Court of Common Pleas. Consequently, all other pending motions are **RENDERED AS MOOT**.

**IT IS SO ORDERED.**

Signed this 13th day of July, 2021, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE